**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonio Valenzuela, | No. CV-15-00665-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Bill Alexander Ford Lincoln Mercury Incorporated, et al., | |
| Defendants. | |

Defendants are Bill Alexander Ford Lincoln Mercury Incorporated, Bill Alexander Automotive Center Incorporated, Alexander Automotive Group, Billy Joe and Alexander Incorporated. This case principally centers on Plaintiff Antonio Valenzuela's termination from his position with one of Defendants' auto dealerships. At issue is Defendants' Motion for Summary Judgment (Doc. 92), which is fully briefed. The Court heard oral argument on March 15, 2017, announced its ruling from the bench on March 28, 2017, and notified the parties that this written order would follow. For the following reasons, Defendants' motion is granted in part and denied it in part.

## **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable

1 | jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324.

## **BACKGROUND**

During the relevant time period, Plaintiff worked as sales representative for Defendants, selling new and used Toyotas. On May 15, 2014, Plaintiff visited his eye doctor because he was experiencing cloudy vision and headaches. Plaintiff underwent unexpected eye surgery, which impaired his ability to drive, walk, and see while he recuperated. After the surgery, Plaintiff's wife drove him to work, where he notified his supervisor that he would need time off to recover.

Plaintiff returned to work on June 9, 2014 with no restrictions. On July 17, 2014, approximately five weeks after Plaintiff returned from medical leave, Defendants terminated him for "lack of performance." Plaintiff's termination coincided with the release of a sales report for the quarter beginning April 1, 2014 and ending July 16, 2014, which showed that he had not met minimum sales goals for that time period.

Plaintiff brought this lawsuit asserting eleven claims against Defendants. He later stipulated to dismissal of six of his claims. In his five remaining claims, Plaintiff alleges that Defendants discriminated against him because of his disability and retaliated against him for exercising his rights under the Americans with Disabilities Act (ADA) (Counts I and II), interfered with his Family and Medical Leave Act (FMLA) leave and retaliated

against him for taking it (Counts VII and VIII), and violated the Fair Labor Standards Act (FLSA) by not properly compensating him for overtime work (Count IX). During oral argument, Plaintiff conceded his FMLA retaliation claim (Count VIII), as well as one theory pertinent to his ADA disability discrimination claim. This order will address Plaintiff's remaining four claims for ADA discrimination and retaliation, FMLA interference, and unpaid overtime compensation (Counts I, II, VII, and IX).

## **DISCUSSION**

**I. ADA**

The ADA protects qualified individuals from adverse employment actions based on their disabilities, and from retaliation for engaging in certain protected activities. 42 U.S.C. §§ 12112(a), 12203(a). Discrimination and retaliation claims both are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of establishing his prima facie case. To establish a prima face case of disability discrimination, a plaintiff must show that he (1) is a disabled person within the meaning of the ADA; (2) was qualified to perform the essential functions of his job; and (3) suffered an adverse employment action because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). For retaliation claims, a plaintiff must show that he (1) engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) would not have suffered the adverse action but for his protected activity. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S.Ct. 2517, 2534 (2013). The burden of making a prima facie case is not an onerous one; "the requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000); *see Snead v. Metro. Prop. & Cas. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

"Establishment of the prima facie case in effect creates a presumption that the

employer unlawfully discriminated against the employee." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). The burden of production then shifts to the employer to provide a legitimate and nondiscriminatory/nonretaliatory reason for the adverse employment action. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination or retaliation, "either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).

Defendants do not argue that Plaintiff is unqualified to perform the essential functions of his job, and it is undisputed that Plaintiff's termination constitutes an adverse employment action. Defendants contend, however, that Plaintiff cannot establish a prima facie case of disability discrimination or retaliation because he (1) is not disabled within the meaning of the ADA, (2) did not engage in protected activity, and (3) cannot establish the requisite causal link between his alleged disability/protected activity and his termination. Defendants also argue that, even if Plaintiff can establish a prima facie case of discrimination or retaliation, summary judgment is appropriate because Defendants have proffered a legitimate, nondiscriminatory and nonretaliatory reason for their action and Plaintiff has not presented adequate evidence of pretext.

**A. Disability**

The ADA defines disability in three ways: "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "A major life activity [is] a basic activity that the average person in the general population can perform with little or no difficulty." *McAlindin v. Cty. of San Diego*, 192 F.3d 1226, 1233 (9th Cir. 1999) (internal quotations and citations omitted). For example, the ADA identifies seeing, walking, and working as major life activities. 42 U.S.C. § 12102(2)(A).

Plaintiff conceded at oral argument that he was not regarded as having such an impairment, and the Court finds that no reasonable jury could conclude Plaintiff had a record of such an impairment. "To have a record of an impairment that substantially limits a major life activity means to have 'a history of, or [have] been misclassified as having, a . . . physical impairment that substantially limits one or more major life activities.'" *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004) (quoting 29 C.F.R. § 1630.2(k)). Plaintiff contends that his supervisors and managers were aware that he was experiencing eye problems and required sick leave. (Doc. 102 ¶ 69.) The evidence he cites in support, however, shows only that Defendants knew he had taken sick days in the past; no evidence indicates that Defendants were aware of the reasons *why* Plaintiff took sick days or of his eye problems prior to his May 2014 surgery. (*See* Doc. 103-1 at 4, 40, 44.) Moreover, Plaintiff does not claim that his cloudy vision and headaches substantially limited major life activities. Instead, he claims that his condition post eye surgery caused these limitations. There is no evidence that Plaintiff has a history of eye surgeries, let alone eye surgeries resulting in such limitations. His May 2014 eye surgery was a one-off occurrence and therefore cannot support a "record of" disability claim.

Nevertheless, viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude his condition post eye surgery qualifies as a substantially limiting physical impairment. Prior to 2008, the United States Supreme Court interpreted "disability" narrowly to include only "permanent or long term" impairments that "prevent[] or severely restrict[] the individual from doing activities that are of central importance to most people's daily lives." *Taylor Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). In 2008, however, Congress amended the ADA with the purpose of rejecting the Supreme Court's narrow interpretation of the law and to "reinstat[e] a broad scope of protection[.]" Pub. L. No. 110-325, § 2(b), 122 Stat. 3553. As amended, the ADA and its accompanying regulations state that "substantially limits" must be "construed broadly in favor of expansive coverage" and "is not meant to be a

demanding standard." 29 C.F.R. § 1630.2(j)(1)(i); *see* 42 U.S.C. § 12102(4)(A). Further, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major live activity when active," and "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting[.]" 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(ix).

Defendants do not dispute that Plaintiff had eye surgery and that his condition post surgery impaired his ability to see, walk, and work—all of which are major life activities. Rather, Defendants argue that as a matter of law Plaintiff's condition cannot qualify as a disability because it was brief and temporary. Plaintiff responds that the ADA no longer imposes strict temporal limitations on substantially limiting impairments. He argues that the transitory nature of his condition is but one factor that a jury may consider when determining whether the limitations his condition imposed on his ability to engage in major life activities were substantial.

Both parties find support for their positions in decisions from other jurisdictions. *Compare Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) (finding that a plaintiff's broken arm did not qualify as a disability because it only temporarily affected her daily activities); *Brodzik v. Contractors Steel, Inc.*, 48 F. Supp. 3d 1183, 1189 (N.D. Ind. Sep. 22, 2014) ("[M]any short term impairments . . . still do not qualify as a disability under the [amended ADA]."); *and Butler v. BTC Foods, Inc.*, No. 12-492, 2012 WL 5315034, at *2 (E.D. Pa. Oct. 19, 2012) ("[A]n employee's inability to work for a period after recovering from surgery does not necessarily support a finding that Plaintiff has a disability under the ADA."), *with Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 332-32 (4th Cir. 2014) ("[N]othing about the [amended ADA] or its regulations suggests a distinction between impairments caused by temporary injuries and impairments caused by permanent conditions."); *Dykstra v. Fla. Foreclosure Attorneys, PLLC*, 183 F. Supp. 3d 1222, 1230-31 (S.D. Fla. 2016) (noting that "courts have held in post-[amendment] cases that temporary injuries may qualify as disabilities," and finding that "a back injury that temporary prevents an employee from working may qualify");

*Geter v. Gov't Publ. Office*, No. 13-916 (RC), 2016 WL 3526909, at *9 (D.D.C. June 23, 2016) ([T]here is nothing on the face of the ADA, or included in the case law, that requires the injury to be permanent . . . . Rather, the ADA covers non-permanent disabilities."); *Hodges v. D.C.*, 959 F. Supp. 2d 148, 154 (D.D.C. 2013) ("[T]he fact that [the plaintiff's] impairment was expected to be temporary is not a bar to his ADA . . . claim[].").

Having surveyed these authorities, the Court adopts the approach advocated by Plaintiff, which is more consistent with the ADA's purpose of affording broad and expansive coverage. As amended, the ADA does not impose a temporal or permanency requirement on substantially limiting physical impairments. Rather, "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." 29 C.F.R. Pt. 1630, App. (internal quotation and citation omitted). On these facts, whether the brevity of Plaintiff's condition renders his limitations insubstantial is a question best answered by the jury.

### B. Protected Activity

Defendant next argues that Plaintiff did not engage in a protected activity. The Court disagrees. Plaintiff claims that he engaged in protected activity by requesting an accommodation for his alleged disability—namely, a leave of absence and adjustment of quarterly performance standards for the calendar quarter that included the period he was on leave. Requesting medical leave can be considered a reasonable accommodation for purposes of the ADA, and requesting a reasonable accommodation is protected activity. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001); *Connor v. Quest Diagnostics, Inc.*, 298 Fed. App'x 564, 555-56 (9th Cir. 2008); *Garcia v. Qwest Corp.*, No. CV-07-999-PHX-LOA, 2008 WL 5114317, *11 (D. Ariz. Dec. 4, 2008).

### C. Causation

Defendants next contend that Plaintiff cannot establish the requisite causal link between his alleged disability/protected activity and his termination by relying on temporal proximity alone. The Court disagrees. Defendants conflate Plaintiff's less

onerous burden of demonstrating causation for purposes of his prima facie case with his burden to show pretext once Defendants have proffered a legitimate nondiscriminatory and nonretaliatory reason for terminating him. "[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory [or nonretaliatory] reason for the termination." *Rey v. C & H Sugar Co.*, 609 Fed. App'x 923, 924 (9th Cir. 2015). But when evaluating Plaintiff's prima facie case, where his burden of proof is minimal, causation may be inferred by timing alone "when adverse employment actions are taken within a reasonable period of time" after the employer learns of the employee's disability or after the employee engages in protected activity. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008); *Villiarimo*, 281 F.3d at 1065.

Here, Defendants terminated Plaintiff two months after learning about his alleged disability, five weeks after he returned from leave, and the same day as the release of a quarterly sales report that did not adjust performance expectations to account for his leave. Given this timeline, and for purposes of Plaintiff's prima facie case, a jury reasonably could infer that Defendant terminated Plaintiff because of his condition, his request for and decision to take leave, and/or his request that the quarterly sales report be adjusted to account for his leave. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding plaintiff could establish prima facie case where adverse action occurred more than two months after protected activity).

### D. Pretext

Lastly, Defendants contend that they terminated Plaintiff because he repeatedly failed to meet his average monthly sales targets over the course of a year and a half and did not improve despite participating in a Sales Mentoring Program (SMP). The burden, therefore, shifts to Plaintiff to put forth specific facts demonstrating that Defendants' proffered reason is pretextual. Having reviewed the evidence cited by both parties, the Court finds that Plaintiff has proffered sufficient evidence to create triable questions of

fact on this issue.

For example, there is contradictory evidence in the record regarding the minimum performance expectations for sales representatives. Plaintiff's job description states that sales representatives are expected to sell 18 cars per quarter, or an average of 6 per month. (Doc. 103 at 26.) The SMP description, however, states that a three-month sales average of less than 21 cars, meaning less than 7 cars per month, is considered poor performance. (Doc. 93-1 at 135.) The SMP description also states that it is designed for both new employees in their first 90 days on the job, and for more experienced employees "with less than a three-month sales average of 27," meaning an average of less than 9 cars per month. (*Id.*) Finally, Plaintiff testified that, although the SMP considered fewer than 21 cars per quarter to be poor performance and he had heard other people talk about a 7 car per month minimum, no one ever told him how many cars he was expected to sell on a monthly or quarterly basis. (Doc. 93-1 at 32-33.) Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that sales representatives were expected to sell a minimum of 6, rather than 7, cars per month. Further, a reasonable jury could find that the SMP was designed to help increase the sales of representatives who had lower monthly averages relative to their peers, but otherwise were meeting their minimum sales requirements. Such findings would undermine Defendants' proffered reason for terminating Plaintiff.

Further, the parties genuinely dispute Plaintiff's sales figures during the relevant time period. Defendants cite deposition testimony from Plaintiff's supervisors who indicate that Plaintiff regularly was among the bottom performers at his dealership. (*See*, *e.g.*, Doc. 93-1 at 54-57.) Although Plaintiff acknowledges that he was disciplined in June 2013 for "lack of performance," he denies that he regularly sold fewer than 6 or 7 cars per month. (Doc. 93-1 at 107; Doc. 102 ¶ 58.) Moreover, the monthly sales reports upon which Defendants rely to establish Plaintiff's poor performance throughout 2013 and into 2014 are susceptible to more than one interpretation because these reports include two employees with Plaintiff's last time, but do not include first names, initials,

or other personal identifying information that would allow the Court to distinguish between the two. (Doc. 93-1 at 70-103.) One of these employees regularly meets or exceeds performance goals; the other does not. Plaintiff contends that he is the better performing employee; Defendants argue the opposite is true. Viewing this evidence in the light most favorable to Plaintiff, a jury reasonably could conclude that Plaintiff did not regularly fall below minimum sales expectations.

Defendants also contend that they terminated Plaintiff, in part, because his sales did not improve despite his participation in the SMP. Plaintiff, however, proffers evidence that the SMP was supposed to last 90 days but ended after only 1 month due to complaints. (Doc. 103-1 at 16, 25.) Moreover, the first quarterly sales report released after implementation of the SMP was the same sales report that failed to account for Plaintiff's medical leave. A jury reasonably could conclude both that the post-SMP sales report distorted Plaintiff's sales averages because it did not account for his medical leave, and that Defendants could not reasonably have expected Plaintiff's sales to improve as a result of his participation in the SMP because that program ended after a single month due to complaints.

Finally, Plaintiff identifies another employee, Paul Wynn, who also was enrolled in the SMP and had similar sales numbers, but was not terminated for lack of performance. Instead, Wynn was transferred to a non-sales position. (Doc. 102 ¶¶ 59, 62, 64; Doc. 93 ¶ 52.) A reasonable jury could conclude that Plaintiff was treated less favorably than Wynn because of his medical condition or his requests that performance goals temporarily be adjusted to account for his medical leave. Accordingly, summary judgment is not appropriate because Plaintiff has raised triable issues of fact regarding Defendants' reasons for terminating him. *See Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 801 (9th Cir. 2016) (emphasizing the low bar to avoid summary judgment in an employment discrimination case).

## II. FMLA Interference

The FMLA entitles eligible employees to 12 weeks of annual leave for, among

other things, "a serious health condition that makes the employee unable to perform the functions of [his] position[.]" 29 U.S.C. § 2612(a). "[I]t is unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise," the right to take approved leave." *Buckman v. MCI World Com Inc.*, 374 Fed. App'x 719, 720 (9th Cir. 2010) (quoting 29 U.S.C. § 2612(a)). To establish a prima facie case of FMLA interference, the plaintiff must show: "'(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.'" *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).

Defendants argue first that Plaintiff cannot succeed on his FMLA interference claim because he did not follow the appropriate policies and procedures for requesting FMLA leave. Pursuant to the FMLA's interpretive regulations:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.303(c). Employers, however, "may waive employees' FMLA notice obligations or [their] own internal rules on leave notice requirements." *Id.* § 825.304(e); *see also* § 825.302(g); *Jadwin v. Cty. of Kern*, 610 F. Supp. 2d 1129, 1164-65 (E.D. Cal. 2009).

Here, although is undisputed that Plaintiff did not comply with Defendants'

- 11 -

policies and procedures for requesting FMLA leave, Defendants nevertheless allowed Plaintiff to take FMLA leave and treated his leave as such. (*See* Doc. 93 at 5-6.) Indeed, Plaintiff testified that he did not believe he had to complete the required paperwork for his FMLA leave because no supervisor asked him to do so. (*Id.* ¶ 35.) Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants' waived their internal FMLA leave requirements by acquiescing to Plaintiff's medical leave. *See Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 539, 554 (6th Cir. 2006) ("If an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave." (citing 29 C.F.R. § 825.304(a)).

Defendants next argue that Plaintiff cannot establish that his FMLA leave was a contributing factor in his termination because Defendants claim they terminated him for performing poorly for over a year prior to his termination. For reasons already explained, however, Plaintiff's performance over this period is genuinely disputed. Indeed, the only evidence in the current record that definitively establishes that Plaintiff fell below minimum quarterly performance expectations is the quarterly sales report that includes the month during which Plaintiff was on medical leave. Further, Plaintiff was terminated on the same day this quarterly sales report was released. A reasonable fact-finder could conclude that the report was a factor in the determination, and that Defendants' failure to adjust performance expectations to account for Plaintiff's FMLA leave rendered such leave illusory. *See Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012) ("The FMLA does not require an employer to adjust its performance standards for the time an employee is actually on the job, but it can require that performance standards be adjusted to avoid penalizing an employee for being absent during FMLA-protected leave."). Summary judgment therefore is inappropriate.

**III. FLSA**

Under the FLSA, employers ordinarily must pay their employees one and one-half times their regular rate for work exceeding forty hours per workweek. 29 U.S.C. §

207(a)(1). To succeed on such a claim, Plaintiff will need to show that he "worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014).

Under Defendants' pay structure, sales representatives are paid the greater of their total commissions for a given pay period or the corresponding Arizona minimum hourly rate for all hours worked during that period. A sales representative will receive purely commissioned-based compensation if his total commissions exceed what he would have earned solely at the minimum hourly rate, but will be paid at the minimum hourly rate if his total commissions are less than this amount. (Doc. 102 ¶ 106.) When calculating the corresponding minimum wage, however, Defendants do not factor in the overtime rate for hours worked in excess of 40 per week.[1] (*Id.* ¶ 108.) Thus, Plaintiff claims that he was not appropriately compensated for certain weeks in which he worked an excess of forty hours. He identifies several months—May 2013 through October 2013, April 2014, and July 2014—during which he claims he worked overtime, received only the corresponding Arizona minimum wage rate for all hours worked, and did not receive the overtime rate for his overtime hours. (*Id.* ¶ 109.)

In response, Defendants analyze only the month of May 2013 and calculate that he actually was paid *more* than the corresponding minimum wage plus the overtime compensation to which he claims he was entitled. (Doc. 107 at 10-11.) But Defendants do not analyze any of the other periods during which Plaintiff claims he was underpaid, and it is not the Court's burden to do so. Rather, as the moving party, Defendants bear the burden of demonstrating that Plaintiff will be unable to carry his burden of proof at trial. They have not done so here. The Court therefore denies summary judgment on Plaintiff's FLSA claim.

---

[1] During his deposition, Jeffrey Fritz, an employee of Defendants, indicated that sales representatives were not paid at the overtime rate because "[t]hey're considered exempt employees, exempt from overtime laws." (Doc. 103-1 at 106.) Defendants, however, do not raise this argument in their motion for summary judgment.

- 13 -

## **CONCLUSION**

For the foregoing reasons, the Court concludes that, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could draw rational inferences in favor of either party on Plaintiffs ADA discrimination, ADA retaliation, FMLA interference, and FLSA claims. Based on concessions at oral argument, however, Defendants are entitled to summary judgment on Plaintiff's FMLA retaliation claim (Count VIII). Further, Plaintiff cannot as a matter of law establish that he has a record of a disability or was regarded as disabled for purposes of his ADA discrimination claim.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 92) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

Dated this 11th day of April, 2017.

_____
Douglas L. Rayes
United States District Judge